UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANIEL PALMA VERA,

    Plaintiff,

v.

THE 6 GROUP, LLC, HERNAN BENITEZ, and
PAOLA MEJIA,

    Defendants,

**MEMORANDUM & ORDER**
21-CV-03696 (HG) (PK)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Daniel Palma Vera filed this action against Defendants The 6 Group LLC, Hernan Benitez, and Paola Mejia, on June 30, 2021, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"). ECF No. 1 (Complaint). Plaintiff seeks a declaratory judgment, and monetary relief. ECF No. 1. Specifically, Plaintiff alleges that Defendants failed to pay him overtime wages in violation of the FLSA and NYLL and violated the notice and recordkeeping and wage statement requirements of the NYLL. *Id.* ¶¶ 39–55. Defendants now move for summary judgment, seeking to dismiss all of Plaintiff's claims. ECF No. 33 (Motion for Summary Judgment). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Defendant The 6 Group is owned by Defendant Benitez, who is married to Defendant Mejia. ECF No. 37-2 ¶¶ 2, 4 (Plaintiff's Rule 56.1 Counterstatement). Plaintiff began working for The 6 Group on November 21, 2017, and stopped working for The 6 Group on September 26, 2019. *Id.* ¶¶ 1, 3. The 6 Group provides construction management services for properties in New York and Connecticut.

ECF No. 33-3 at 5, 8; ECF No. 33-5 at 3.[1]  Plaintiff began working for The 6 Group after meeting Benitez in Manhattan and asking him for work.  ECF No. 33-3 at 4.  At some point during his work for The 6 Group, Plaintiff was injured and missed about four weeks of work.  *Id.* at 19; ECF No. 37-2 ¶ 14.  He did not apply for workers' compensation for his injury because The 6 Group did not offer workers' compensation.  ECF No. 37-2 ¶¶ 15–16.  Plaintiff did not receive health or dental insurance, a pension, or a 401(k) from The 6 Group.  *Id.* ¶¶ 17–20.

Mejia's role at The 6 Group was more limited than Benitez's—she never told Plaintiff where to work or what to do.  *Id.* ¶¶ 6–7.  She did, however, perform inspections at two sites where Plaintiff worked in Queens and Connecticut and, on occasion, Plaintiff's paychecks were issued in Mejia's name.  *Id.* ¶ 5; ECF No. 33-3 at 6–8.

Plaintiff filed his Complaint on June 30, 2021, and asserted four claims against all Defendants.  *See generally* ECF No. 1.  His first claim alleges that Defendants failed to pay him overtime wages for all the hours he worked in violation of the FLSA.  *Id.* ¶¶ 39–45.  His second claim alleges that Defendants failed to pay him overtime wages for all the hours he worked in violation of the NYLL.  *Id.* ¶¶ 46–49.  Plaintiff's third and fourth claims, respectively, allege that Defendants failed to provide him with written notice of the information required by § 195(1) of the NYLL, including his rate of pay and regular pay day, and that Defendants failed to provide him with the wage statements required by § 195(3) of the NYLL (the "NYLL Wage Statement and Notice Claims").  *Id.* ¶¶ 50–55.

Defendants moved for summary judgment on June 3, 2024.  ECF No. 33.  Plaintiff filed his opposition on July 26, 2024, *see* ECF No. 37 (Plaintiff's Opposition), and Defendants filed their reply on August 8, 2024, *see* ECF No. 38 (Defendants' Reply).

---

[1]  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[2] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "The role of the [C]ourt is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jin Dong Wang v. LW Rest, Inc.*, 81 F. Supp. 3d 241, 252 (E.D.N.Y. 2015). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

## **DISCUSSION**

Defendants argue that Plaintiff was an independent contractor for, rather than an employee of, The 6 Group and that therefore summary judgment is appropriate on his FLSA

---

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

3

claims and NYLL overtime wage claims. Defendants also argue that neither Benitez nor Mejia can be considered Plaintiff's employer under the FLSA or the NYLL. Finally, Defendants argue that Plaintiff's NYLL Wage Statement and Notice Claims should be dismissed because Plaintiff has not established Article III standing to bring those claims. Plaintiff responds that material disputes of fact prevent a determination at this stage that Plaintiff was an independent contractor and that he was not an employee of each Defendant.

> I. **There Are Genuine Issues of Material Fact Regarding Whether Plaintiff was an Employee or an Independent Contractor of The 6 Group**
>
> A. *Analysis Under the FLSA*

"[T]he FLSA's definition of employ stretches the meaning of employee to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). As such, "employment for FLSA purposes [i]s a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141–42. In determining whether an employer-employee relationship exists under the FLSA, the Court's analysis "should be grounded in economic reality rather than technical concepts" and must depend "upon the circumstances of the whole activity." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013). Additionally, "[t]he question of whether any [d]efendant is an FLSA 'employer' is a mixed question of law and fact," and "[m]ixed questions of fact and law, such as this, are especially well-suited for jury determination" and "rarely suitable for summary judgment." *Franco v. Ideal Mortg. Bankers LTD.*, No. 07-cv-3956, 2011 WL 317971, at *6 (E.D.N.Y. Jan. 28, 2011).

Under "the fact-intensive economic reality test," courts determining whether an individual was an employee or an independent contractor consider: "(1) the degree of control exercised by the employer over the worker[;] (2) the worker['s] opportunity for profit or loss and

4

their investment in the business[;] (3) the degree of skill and independent initiative required to perform the work[;] (4) the permanence or duration of the working relationship[;] and (5) the extent to which the work is an integral part of the employer's business." *Thomas v. TXX Servs., Inc.*, 663 F. App'x 86, 88–89 (2d Cir. 2016).

With respect to the first factor, Defendants argue that The 6 Group "did not exercise sufficient control over the Plaintiff to be deemed his employer." ECF No. 33-7 at 9. An employer, however, "does not need to look over his workers' shoulders every day in order to exercise control." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988). Rather, "[t]o assess the degree of control that [The 6 Group] exercised over [Plaintiff's] work, the Court considers whether the [D]efendant was the ultimate decision maker on the main conditions of [Plaintiff's] work, including schedule, worker responsibilities, and compensation." *Sue v. CE Sec. LLC*, No. 21-cv-57, 2024 WL 1308405, at *7 (E.D.N.Y. Mar. 27, 2024). Typically, when an alleged employer determines a worker's pay, assigns their work locations, and sets their hours, they exercise a degree of control that suggests an employment relationship. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 350–51 (E.D.N.Y. 2015).

Here, Plaintiff testified that his work for The 6 Group included "everything that [Benitez, the owner of The 6 Group] told [him] to do," and included painting, plumbing, electrical, and demolition work. ECF No. 33-3 at 8–9, 16. He further testified that if he did not know how to do something, either Benitez or the foreman would teach him. ECF No. 37-3 at 10. Plaintiff explained that Benitez told him what time to start work each morning and told him that he could not leave each day until he finished the work that had been assigned to him. *Id.* at 9; ECF No. 33-3 at 14, 22. Plaintiff testified that Benitez determined Plaintiff's salary. ECF No. 33-3 at 15; ECF No. 33-5 at 6. And Benitez himself testified that he was "the primary person" that

5

Plaintiff spoke with to "understand what the scope of [his] work was." ECF No. 33-5 at 10. Despite Benitez's insistence that Plaintiff "was never an employee," *see id.* at 4, the referenced testimony in the record creates a material dispute of fact regarding whether The 6 Group, through Benitez, its owner, set the relevant conditions of Plaintiff's work. These factual issues prevent the Court from determining that this factor favors Defendants.

Next, Defendants argue that the second factor favors them because "Plaintiff made an investment in the business by purchasing tools with his own money that he used at [T]he 6 Group's jobsites," and "paid for his own transportation to and from the job site." ECF No. 33-7 at 11. In analyzing this factor, courts typically look at "[t]he extent of the economic risk which the [worker] incurred" and how it compares to the risk undertaken by the employer, and whether the worker "stood to earn a return on its investment." *Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 920 (S.D.N.Y. 2013). Where a worker "could not increase their profits through managerial skill or by investing capital into the business," courts usually find that this factor weighs in favor of an employment relationship. *Sue*, 2024 WL 1308405, at *8.

It is true that "the more tools that an individual provides or owns himself, the more likely he will be considered an independent contractor." *Id*. However, Plaintiff testified that he only purchased the tools because Benitez told him to do so, that other workers at the same job sites shared the tools with him, and that Benitez told Plaintiff he would "reimburse" him for the tools. ECF No. 37-2 ¶¶ 9, 12; ECF No. 33-3 at 13; ECF No. 37-3 at 8. Plaintiff's testimony raises a material dispute of fact as to whether Plaintiff purchased the tools as an investment in The 6 Group's business or simply did so at his employer's direction with the understanding that he would be paid back. With respect to Plaintiff paying for his own transportation, employees in all manner of jobs cover their own transportation costs, and Defendants cite to no case law to

6

support their far-fetched proposition that Plaintiff is an independent contractor because he "could control the profit he could make in a day for the work he performed for [T]he 6 Group" by choosing which form of transportation to take to work.[3] ECF No. 33-7 at 12. Again, there are material disputes of fact that prevent a finding that this factor favors Defendants.

Defendants concede that the third factor favors a finding that Plaintiff was an employee of The Six Group because he "did not perform the type of construction work that required a high degree of skill nor independent initiative." *Id*.

Next, with respect to the fourth factor—permanence or duration of the working relationship—Defendants argue that it favors a finding that Plaintiff was an independent contractor because he only worked "on-and-off" for The 6 Group, did not file for workers' compensation after he was injured, and "sometimes . . . was not available." *Id.* at 12–14. Plaintiff counters that he worked for Defendants for almost two years, even taking into account the period he was injured. ECF No 37 at 15; ECF No. 33-3 at 12. Consistent with Plaintiff's testimony, a document characterized by Defendants as "The 6 Group's attendance records" shows an individual named "Daniel P." (who the Court understands to be Plaintiff Daniel Palmer Vera) performing work multiple days a week between November 21, 2017, and December 27, 2017; for a few days in January 2018; again multiple days a week from February 2018 through December 2018; and then again from January 2019 through September 2019. ECF No. 33-6. While "[a] worker who is transient and typically works for several employers is more likely to be an independent contractor," *see Sue*, 2024 WL 1308405, at *9, courts have held that working relationships that lasted a period of years favor employment status, even when there are "periods of days, and sometimes weeks," between tasks, *see Lima v. Napoli*, No. 19-cv-1699, 2023 WL

---

[3] This fact is also disputed—Plaintiff testified that Benitez had promised to pay for his transportation but never did so. ECF No. 37-3 at 15; ECF No. 33-3 at 18.

7

2429998, at *7 (E.D.N.Y. Feb. 10, 2023).  Given the record before the Court, material disputes of fact make it impossible to determine whether this factor favors Defendants or Plaintiff.

Finally, with respect to the fifth factor, Defendants argue that "Plaintiff was not an integral part of [T]he 6 Group's business" because Defendants "had other options" who could perform the work that Plaintiff did.  ECF No. 33-7 at 14.  This misstates the test, which does not look at whether the worker *himself* was an integral part of the alleged employer's business, but rather at whether *the work performed by the worker* was an integral part of the business.  *Cox v. German Kitchen Ctr., LLC*, No. 17-cv-6081, 2023 WL 8648839, at *7 (S.D.N.Y. Dec. 14, 2023) ("Defendants incorrectly focus on the extent to which *Plaintiff* was an integral part of Defendants' business.  The analysis is instead centered on the *work* Plaintiff performed, and whether such work is integral to Defendants' business.").  The record demonstrates that The 6 Group performed construction work and that Plaintiff's work included construction related tasks.  ECF No. 33-5 at 3, 5; ECF No. 37-3 at 5–6, ECF No. 37-5 at 1–2.  Construction-related tasks are clearly integral to the success of a company performing construction work.  *Cf., e.g.*, *Hart*, 967 F. Supp. 2d at 921 ("No reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers."); *Cox*, 2023 WL 8648839, at *7 ("No reasonable jury could find that a firm that designs and sells kitchens does not have as an integral part of its business the work of designing and selling the kitchens.").  Accordingly, regardless of whether other workers could perform the same work, Plaintiff's work was integral to The 6 Group's business, and this final factor does not favor Defendants.

On the factual record currently before the Court, a reasonable jury could conclude that Plaintiff worked as an employee of The 6 Group as defined by the FLSA.  Accordingly, triable

issues of fact exist as to his proper classification and Defendants' motion for summary judgment on Plaintiff's FLSA claim against The 6 Group is denied.

### B. Analysis Under the NYLL

The test for determining whether an individual is an employee under the NYLL is substantially similar to the test under the FLSA. *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012). However, while the FLSA focuses on the economic reality of the relationship, under the NYLL, "the critical inquiry . . . pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id*. To determine whether a worker qualifies as an employee under the NYLL, courts analyze factors such as whether the worker: "(1) worked at his [] own convenience[;] (2) was free to engage in other employment[;] (3) received fringe benefits[;] (4) was on the employer's payroll[;] and (5) was on a fixed schedule." *Thomas*, 663 F. App'x at 89. "Although FLSA and NYLL [] analyses are separate, there is general support for giving FLSA and the [NYLL] consistent interpretations." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 444 (S.D.N.Y. 2017); *Bautista v. Cnty.-Wide Masonry Corp.*, No. 19-cv-8808, 2024 WL 54101, at *3 (S.D.N.Y. Jan. 4, 2024). Indeed, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Hart*, 967 F. Supp. 2d at 924.

Here, the same material disputes of fact that prevented the Court from determining as a matter of law that Plaintiff was an independent contractor of The 6 Group rather than an employee under the FLSA, prevent the Court from determining the same as to the NYLL. While certain factors favor Defendants—Plaintiff admits that he did not receive fringe benefits from Defendants and that he was free to engage in other employment, *see* ECF No. 37 at 19—these factors are to be afforded only "modest weight." *Hart*, 967 F. Supp. 2d 901, 925. "[T]hat

9

plaintiff[] w[as] free to take on other jobs is of limited relevance under the NYLL," and "[t]he lack of fringe benefits" is "unimportant" because to assign that factor "much weight would effectively allow any employer to control, under New York law, a worker's status" by "denying [the worker] employee benefits."  *Id.*  And, as previously discussed, material disputes of fact prevent a determination of whether Plaintiff worked at his own convenience or as directed by Benitez, whether Plaintiff was on The 6 Group's payroll, and whether Plaintiff worked a fixed schedule.  *See supra* Section I.A.  Accordingly, as with Plaintiff's claims under the FLSA, there are triable issues of fact as to Plaintiff's proper classification under the NYLL.  Defendants' motion for summary judgment on Plaintiff's NYLL overtime wage claims against The 6 Group is denied.  *See, e.g.*, *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 27 (E.D.N.Y. 2020) (denying summary judgment on plaintiff's FLSA claims and holding that "[b]ecause the standard for employee status under the NYLL is substantially the same as that under the FLSA, summary judgment with regard to [p]laintiff's employee status under the NYLL is appropriate for the same reasons"); *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 452 (S.D.N.Y. 2019) ("[T]his [c]ourt's conclusions with respect to the defendants' status as employers under the FLSA apply equally to the defendants' status as employers under the NYLL."); *Jin Dong Wang*, 81 F. Supp. 3d at 258 (after determining that issues of fact prevent the court from determining plaintiff was not an employee under the FLSA, determining the same under the NYLL).

    **II.**    **Benitez and Mejia's Liability as Employers Under the FLSA and the NYLL**

An employee may simultaneously have multiple employers within the meaning of the FLSA, *see Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003), and, "[u]nder certain circumstances, the FLSA permits an individual within a company that employs a worker to be held personally liable for damages as that worker's employer," *see Inclan v. N.Y. Hosp. Grp.*,

10

*Inc.*, 95 F. Supp. 3d 490, 507 (S.D.N.Y. 2015). "Absolute control" is not a prerequisite for a finding that an individual is an employer for the purposes of FLSA liability. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015). Rather, "[t]he underlying inquiry in determining employer status is whether the individual possessed operational control over employes[.]" *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018). "The question of whether a[n individual] defendant is an employer under the FLSA is a mixed question of law and fact, with the existence and degree of each relevant factor lending itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012).

To determine the nature of the relevant relationship, courts look at whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05; *see also Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 284 (E.D.N.Y. 2013) (outlining the same test). Because the definitions are so similar, "[d]istrict courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013); *see also Cruz v. Rose Assocs., LLC*, No. 13-cv-0112, 2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013) (explaining that the definition of employer under either act is coextensive); *Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534–35 (E.D.N.Y. 2007) ("[T]he question of whether an individual is an employer under New York law involves the same considerations as those under federal law."); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) (analyzing whether defendants "qualify as employers under the FLSA and NYLL together, using the FLSA

11

standard, because any difference between the two definitions would be immaterial"). Accordingly, the Court will analyze Plaintiff's FLSA and NYLL claims against Benitez and Mejia together.

> A.  *Material Disputes of Fact Prevent a Determination that Benitez Was Not Plaintiff's Employer Under the FLSA and the NYLL*

Material disputes of fact make it impossible for the Court to determine as a matter of law that Benitez did not employ Plaintiff.

Defendants concede that, as the owner of The 6 Group, Benitez had the power to hire and fire those that performed work for The 6 Group, *see* ECF No. 33-7 at 19–20, consistent with Plaintiff's testimony that Benitez was the person who both hired and fired him. ECF No. 37-3 at 1, 17. Accordingly, this factor weighs against Defendants.

As to the second factor, the extent to which Benitez controlled and supervised Plaintiff's work schedule and conditions of employment, there are material disputes of fact. Although Defendants argue that Benitez did not supervise Plaintiff's work or control the conditions of his employment, Benitez himself agreed that he "was the primary person that [Plaintiff] spoke to, to you know understand what the scope of work was." ECF No. 33-5 at 10. And, as already noted, Plaintiff testified that his work included "everything that [Benitez] told [him] to do," *see* ECF No. 33-3 at 11, that Benitez told him what time to start work in the morning and that he could not leave until he finished what he had been assigned that day, *see id.* at 14, 22; ECF No. 37-3 at 9, and that Benitez told him where to go to do his work, *see* ECF No. 33-3 at 7. Plaintiff's testimony creates material disputes of fact regarding the extent to which Benitez controlled and supervised Plaintiff, and prevents the Court from determining that this factor favors Defendants.

The same is true for the third factor—whether Benitez determined Plaintiff's rate and method of payment. Plaintiff testified that he was paid by Benitez by check, and that Benitez

12

determined how much and when he was paid. ECF No. 33-3 at 15; ECF No. 37-3 at 5, 11–14. Benitez agreed that he paid Plaintiff, testifying that he was the only person at The 6 Group who would "hand [Plaintiff] his pay," but argued that he did not control Plaintiff's pay because he negotiated Plaintiff's pay with Plaintiff depending on how much time Plaintiff spent working on a project. ECF No. 33-5 at 6. Based on these disputed material facts, the Court cannot conclude that this factor weighs in favor of a finding that Benitez was not Plaintiff's employer.

As to the final factor, whether Benitez maintained employment records, Benitez testified that he did not specifically record the hours that Plaintiff worked but did record the days on which Plaintiff and all other workers worked at specific job sites. *Id.* at 12; *see also* ECF No. 33-6 (attendance records containing entries that show the days on which a "Daniel P." worked). Defendants appear to concede that recording on what days and at what location Plaintiff worked amounts to keeping employment records, stating that "[o]*ther than the recording of where the Plaintiff worked* [], Benitez did not maintain any employment records for the Plaintiff." ECF No. 33-7 at 23 (emphasis added). Defendants cite to no case law to support their apparent argument that this factor must come out in their favor because the employment records that Benitez kept do not list the hours that Plaintiff worked. On this evidence, this factor does not weigh in favor of Defendants.

Accordingly, material disputes of fact prevent the Court from determining as a matter of law that Benitez was not Plaintiff's employer, and Defendants' motion for summary judgment as to Plaintiff's FLSA claim and NYLL overtime wage claim against Benitez is denied.

> B. *Mejia Was Not Plaintiff's Employer Under the FLSA and the NYLL*

As to Mejia, however, the Court concludes that, as a matter of law, Mejia was not Plaintiff's employer. Plaintiff concedes that "there is no evidence in the record that Mejia hired

13

or fired" employees at The 6 Group and that [t]here is no evidence in the record that Mejia maintained employment records." ECF No. 37 at 22, 24. Accordingly, these two factors weigh in favor of a finding that Mejia did not employ Plaintiff.

As to the second factor, Plaintiff contends that Mejia supervised Plaintiff's work schedule and conditions of employment because she "often visited some of the jobsites to inspect and observe Plaintiff's work" and "how the job was moving along." *Id.* at 22–23. The undisputed facts in the record bely this assertion. First, Plaintiff never testified that Mejia inspected *his* work but only that "we were informed that she was going to do inspections when we were working and she came when we were working" to two specific sites out of the many at which Plaintiff worked. ECF No. 37-3 at 2–4. Plaintiff concedes that Mejia never told him where to go to work and that she never told him personally what to do. *Id.* at 4, 22. There is no evidence suggesting that Mejia was inspecting Plaintiff's work specifically, or that Mejia's inspections of two job sites, one of which was her own home, *see id.* at 3, had any effect on Plaintiff's schedule or the conditions of his employment. *Cf. Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 464 (holding that an individual's daily presence at a work location revealed "nothing about her level of authority"). And, the fact that Plaintiff could only recall two instances when Mejia visited job sites in the almost two years that he worked for The 6 Group makes it clear that Mejia did not have the kind of "operational control over employees" required for employer liability. *Tapia*, 906 F.3d at 61.

Finally, with respect to Mejia's ability to determine Plaintiff's rate and method of payment, Plaintiff contends that he was "sometimes paid" by a check in Mejia's name and that this suggests she "was involved in determining [his] pay each week and paying him personally." ECF No. 37 at 23. Again, that is not consistent with the record. Plaintiff never claimed that

14

Mejia had a role in determining his pay or personally gave him money—all he stated was that "[t]here were some checks under her name." ECF No. 37-3 at 4. He further clarified that some of the checks he was paid with were in her name because "Mr. Benitez told me that the account was under her name," and that "[Benitez] was the one paying me." *Id.* at 5, 11. Indeed, when asked if he ever received "anything from [Mejia] with respect to The 6 Group," Plaintiff clarified that he only ever received checks in her name. *Id.* at 4–5. Consistent with Plaintiff's unambiguous testimony, Benitez testified that he was the only person at The 6 Group who would "hand [Plaintiff] his pay." ECF No. 33-5 at 6. Aside from some of the checks listing Mejia's name, there is no evidence in the record that suggests that Mejia determined the amount that Plaintiff was paid or the manner in which he was paid. The checks alone are not sufficient to raise a material dispute of fact as to Mejia's involvement in the manner and amount of Plaintiff's compensation. *See, e.g.*, *Salinas*, 123 F. Supp 3d at 464 (the fact that an individual signed employee paychecks was not probative of her being an employer when the record did not show that she was otherwise involved in employee compensation). From this record, it is clear that Mejia was not sufficiently involved in the process by which Plaintiff was paid.

There are no material disputes of fact and *all* of the factors support a finding that Mejia was not Plaintiff's employer under the FLSA or the NYLL because she did not "possess control over [The 6 Group's] actual operations in a manner that relates to [P]laintiff's employment." *Irizarry*, 722 F.3d at 109. Accordingly, Defendants' motion for summary judgment is granted as to Mejia, and Plaintiff's FLSA and NYLL claims against Mejia are dismissed.

### III. Plaintiff Does Not Have Article III Standing to Assert His NYLL Wage Statement and Notice Claims

Defendants argue that regardless of whether Plaintiff is an employee or independent contractor of any Defendant, Plaintiff's NYLL Wage Statement and Notice Claims must be

15

dismissed because Plaintiff asserts no injury in fact that stems from his alleged failure to receive those documents and therefore has not established Article III standing. ECF No. 33-7 at 26–27. Rather than argue that he has standing to assert these claims, Plaintiff states that "[i]f the Court finds that Plaintiff does not have Article III standing, it cannot dismiss these claims with prejudice." ECF No. 37 at 24. Plaintiff's failure to engage with Defendants' arguments regarding his lack of standing amounts to abandonment of these claims. *See, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128 (2d Cir. 2016) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

And, even if Plaintiff had not abandoned these claims, recent precedent makes clear that "[t]echnical statutory violations that do not lead to either a tangible injury or something akin to a traditional cause of action cannot sustain Article III standing in federal court." *Sevilla v. House of Salads One LLC*, No. 20-cv-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022). Rather, Plaintiff must "show some causal connection between the lack of accurate notices and the downstream harm" in order to establish Article III standing to bring these statutory claims under the NYLL. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308–09 (2d Cir. 2024) (holding that "a plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion," but the plaintiff-employee "cannot assume this conclusion without analysis or rely on speculation and conjecture"). Here, neither Plaintiff's Complaint nor his opposition to Defendant's motion for summary judgment allege any downstream harm or tangible injury that Plaintiff suffered as a result of Defendants' alleged violations of these specific sections of the NYLL. *See generally* ECF No. 1; ECF No. 37.

16

Plaintiff plainly has not demonstrated that he "plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided," which is necessary to establish "a concrete injury-in-fact sufficient to confer standing to seek statutory damages."[4] *Guthrie*, 113 F.4th at 308–09.  Accordingly, Plaintiff's NYLL Wage Statement and Notice Claims must be dismissed without prejudice[5] for lack of Article III standing.  *See, e.g.*, *Chen v. Lilis 200 W. 57th Corp.*, No. 19-cv-7654, 2023 WL 2388728, at *8–9 (S.D.N.Y. Mar. 7, 2023) (granting summary judgment and dismissing plaintiff's NYLL claims that alleged only a statutory violation for lack of standing).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment.  ECF No. 33.  Defendants' motion is GRANTED as to Plaintiff's claims against Mejia, and Plaintiff's NYLL Wage Statement and Notice Claims as to all Defendants, and those claims are DISMISSED.  Defendants' motion is DENIED as to Plaintiff's claims for overtime wages under the FLSA and NYLL against Benitez and The 6 Group.

The parties' proposed joint pretrial order is due on or before March 7, 2025.  The parties are reminded that their joint pretrial order must comply with the requirements set forth in Section VI.B. of the Court's Individual Practices.  The Court will also enter a separate Order referring

---

[4]  Even at summary judgment, "[t]he burden lies with a plaintiff to demonstrate standing since the plaintiff is the party invoking federal jurisdiction." *Veloz v. MM Custom House Inc.*, No. 19-cv-852, 2024 WL 1282698, at *5 (E.D.N.Y. Mar. 26, 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021)).

[5]  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice[.]").

17

this case, for settlement purposes only, to Magistrate Judge Kuo to conduct a settlement conference on a date agreed upon with Judge Kuo.

SO ORDERED.

                                                  */s/ Hector Gonzalez*
                                                  HECTOR GONZALEZ
                                               United States District Judge

Dated: Brooklyn, New York
       February 5, 2025